UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA HILDA SANCHEZ DE MENDOZA,<br><br>                Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Case No. 1:22-cv-01190-JLT-CDB<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO AFFIRM THE COMMISSIONER OF SOCIAL SECURITY'S DECISION<br><br>(Doc. 20) |

      Maria Hilda Sanchez de Mendoza ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the certified administrative record (Doc. 13) and the parties' briefs, which were submitted without oral argument. (Docs. 20, 23). Plaintiff asserts the Administrative Law Judge's ("ALJ") mental residual functional capacity ("MRFC") was not supported by substantial evidence of record and that the ALJ erred in rejecting a treating psychiatrist's MRFC limitations. (Doc. 20 at 7). Plaintiff requests the Court to remand this case to the Commissioner for the payment of benefits or in the alternative, to remand this case for a new hearing. *Id*. at 38.

///

# I. BACKGROUND

## A. Administrative Proceedings

On November 4, 2015, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on February 1, 2015. (Administrative Record ("AR") 64). The claim was denied initially on June 28, 2016, and upon reconsideration on September 23, 2016. *Id*. A hearing was held before ALJ Joyce Frost-Wolf on May 18, 2018. *Id*. at 64, 73. On September 6, 2018, ALJ Frost-Wolf held Plaintiff had not been under a disability, as defined in the Social Security Act, from February 1, 2015, through the date of the decision. *Id*. at 73. ALJ Frost-Wolf found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> she can perform simple, routine tasks. She cannot have public contact. She cannot work at unprotected heights or around heavy machinery with fast-moving parts. She cannot work in areas of uneven terrain. She cannot perform work requiring handling of small objects or reading of small or fine print.

*Id*. at 68. On July 2, 2019, the Appeals Council denied Plaintiff's request for review. *Id*. at 78.

On July 23, 2019, Plaintiff protectively applied for disability insurance benefits alleging a period of disability beginning September 7, 2018 (the day after ALJ Frost-Wolf's decision). *Id*. at 86-87. Plaintiff was 50 years old on the alleged disability onset date. *Id*. at 86. Plaintiff claimed disability due to issues with right eye vision problems, anxiety, and depression. *Id*. at 87.

The Commissioner denied Plaintiff's application initially and again on reconsideration. *Id*. at 86-99, 101-16. Plaintiff submitted a written request for a hearing by an ALJ. *Id*. at 133-34. On July 13, 2021, Plaintiff represented by counsel, appeared in person before ALJ John M. Dowling. *Id*. at 40-57. A vocational expert, Spanish interpreter, and hearing reporter also were present for the hearing. *Id*. at 42.

## B. Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

**C.     The ALJ's Decision**

On July 30, 2021, ALJ Dowling issued a decision finding that Plaintiff was not disabled. *Id*. at 22-33. ALJ Dowling acknowledged that Plaintiff previously received an adverse decision on September 6, 2018. *Id*. at 22-23, 25. Pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), ALJ Dowling found Plaintiff rebutted the presumption of non-disability and presented new and material evidence to support additional limitations in Plaintiff's RFC. *Id*. at 25 (citing Acquiescence Ruling 97-4(9), available at 1997 WL 742758 (hereinafter "AR 97-4(9)"); 20 CFR 404.1563 and 404.1520). Specifically, Plaintiff had shown "changed circumstances" that the record contained impairments not previously in evidence or considered severe, including depression with paranoia and impaired judgment. *Id*. at 25. ALJ Dowling also noted the record contains new and material evidence regarding Plaintiff's RFC, including additional treatment, warranting additional review without adoption of the previous hearing decision's RFC. *Id*.

Thereafter, ALJ Dowling conducted the five-step disability analysis set forth in 20 CFR 404.1520(a). *Id*. at 25-32. ALJ Dowling found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of September 7, 2018, through her date last insured of June 30, 2019. *Id*. at 25. ALJ Dowling held Plaintiff possessed the following severe impairments: corneal ectasia with some vision loss, major depressive disorder, and anxiety disorder (step two). *Id*. at 25.

Next, ALJ Dowling determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). *Id*. at 26-27. The ALJ then assessed Plaintiff's RFC. *Id*. at 27. The ALJ found that Plaintiff retained the RFC:

> "to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant must avoid all exposure to unprotected heights and must avoid concentrated exposure to hazardous machinery. She cannot handle small objects or read small or fine print. The claimant is limited to simple, routine tasks and is limited to no interaction with the public."

*Id*. In making this finding, ALJ Dowling asserts he considered all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical

3

evidence and other evidence. *Id*. at 28 (citing 20 CFR 404.1529 and SSR 16-3p). ALJ Dowling acknowledged he also considered the medical opinion(s) and prior administrative medical finding(s). *Id*. (citing 20 CFR 404.1520c).

ALJ Dowling noted that at the time of the hearing, Plaintiff lived independently, had a driver's license, and drove in her local area. *Id*. ALJ Dowling found Plaintiff wears glasses and has a special pair for reading that allows her to read letters she receives in the mail. *Id*. Plaintiff can read a little bit in English but if the type is small, she sometimes has trouble reading. *Id*. Plaintiff can watch television if she is in front of it but gets headaches and fatigue if she watches too long. She also can cook using a recipe. *Id*. ALJ Dowling noted Plaintiff "stopped working because of depression and problems with her vision: she was picking rotten fruit because she could not see." *Id*.

Although ALJ Dowling acknowledged that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he found the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. *Id*. Moreover, ALJ Dowling found such statements were inconsistent because the objective clinical evidence supports some limitations but not to the degree alleged. *Id*.

ALJ Dowling determined:

> The claimant is limited by depression. Treatment notes indicate bouts of depression and anxiety for years (Exhibit B4F/5). During the unadjudicated period, the claimant saw Claudia Gonzalez, Psy.D. and Clark, PA-C for treatment of depression (Exhibit B4F). The mental status evaluations reflect unhappy mood, paranoia at time and reports of visual and auditory hallucinations (Exhibit B4F/19). Despite the reported symptoms and findings during the examination, Dr. Gonzalez did not diagnose a specific psychotic disorder, as discussed above.
>
> In May 2019, at the end of the unadjudicated period, the claimant reported depression, anxiety for years with frequent worries and negative thoughts. She reported improvement with treatment but with ongoing depressed mood and hearing voices: she was unable to tell the difference between what was real and what was not (Exhibit B4F/18). On examination, she was tearful at times with a flat affect, expressed paranoia and somatic thought content and endorsed auditory and visual hallucinations (Exhibit B4F/19). Despite the reported symptoms, the mental status evaluation also indicated good eye contact, cooperative attitude, clear speech, fair

> insight, good judgment, and intact thought process (Exhibit B4F/19). The following month, in June 2019, the claimant reported ongoing anxiety and negative thoughts; however, the notes indicate that hallucinations occurred in the past and examination notes indicated no perceptual disorder (Exhibit B4F/16). However, there was still evidence of paranoia and her mood was unhappy and worried. Treatment for these symptoms included medications, cognitive restructuring and mindfulness techniques (Exhibit B4F/16). The undersigned notes that the records from August 2020, after the date last insured, the claimant reports ongoing symptoms of psychosis and indicates that the symptoms began two years prior, consistent with the record (Exhibit B22F/32). Dr. Pusateri also assessed major depressive disorder and specified that the diagnosis was without psychotic features (Exhibit B18F). The undersigned finds that the restrictions in the residual functional capacity adequately addresses all of the alleged limitations and the new symptoms that arose during the unadjudicated period. The restriction to simple work adequately addresses both reported limitation in memory and concentration as well as reported limitations in her ability to complete tasks and sustain activities. The restriction to work with the public adequately addresses limitations related to paranoia, hallucinations and limitation in insight.

*Id*. at 28-29.  Next, ALJ Dowling considered the prior hearing decision. *Id*. at 29.  The prior decision found that Plaintiff had the ability to perform the same RFC assessed in this decision. *Id*.  ALJ Dowling gave the "prior residual functional capacity some weight finding that it is supported by the evidence and gives [Plaintiff] the greatest benefit of the doubt." *Id*.  ALJ Dowling noted that a new diagnosis of depression is included in treatment records from the unadjudicated period and consideration of Listing 12.04. *Id*. at 29-30.

ALJ Dowling found that the State Agency psychological finding offered by Nadine J. Genece, Psy. D. was persuasive. *Id*. at 30.  ALJ Dowling noted Dr. Genece found that the claimant was limited to simple tasks with no contact with the public. *Id*.  Dr. Genece adopted the findings from the prior hearing decision and supported the findings with examination notes from the unadjudicated period. *Id*.  ALJ Dowling determined the record as a whole was consistent with the limitations Dr. Genece indicated. *Id*.

Next, the ALJ found that the State Agency findings offered by K. Gregg, M.D. were not persuasive. *Id*.  Dr. Gregg found that Plaintiff's psychological impairments were not severe. *Id*.  ALJ Dowling determined Dr. Gregg's assessment was not supported by his analysis which indicated that Plaintiff had moderate limitations in the four broad areas of functioning. *Id*.  ALJ Dowling held Dr. Gregg's findings were inconsistent with the record,

1   which indicated that Plaintiff's depression and anxiety caused severe limitation in her
2   ability to perform work activities.  *Id*.

3   ALJ Dowling also considered the opinion offered by Toni Pusateri, M.D., and
4   found it was not persuasive.  *Id*.  ALJ Dowling noted Dr. Pusateri completed a checklist
5   form indicating that Plaintiff has severe limitations in her ability to perform work activities.
6   *Id*.  Dr. Pusateri marked the box "precludes performance for more than 15% of the
7   workday" for every category of work activity provided.  *Id.*  Dr. Pusateri concluded that the
8   claimant would miss five or more days of work per month.  *Id*.  The completed form did
9   not include any support for the uniform finding of serious limitation in every task.  *Id*.  ALJ
10  Dowling determined Dr. Pusateri's opinions were not consistent with the record as a whole.
11  *Id*.  Moreover, ALJ Dowling noted Dr. Pusateri's opinions were offered in May 2021 and
12  indicated that limitations began in February 2021 – more than 18 months after the date last
13  insured.  *Id*.  ALJ Dowling held Dr. Pusateri's opinion did not address the relevant period
14  and was inconsistent with the record as a whole.  *Id*.

15  ALJ Dowling determined that Plaintiff was capable of performing her past relevant work
16  as a fruit packer (step four).  *Id*. at 31.  ALJ Dowling found the work did not require the
17  performance of work-related activities precluded by Plaintiff's residual functional capacity.  *Id*.
18  (citing 20 CFR 404.1565).  ALJ Dowling also found Plaintiff had the capacity to perform other
19  jobs in the national economy, including cleaner and laundry worker (step five).  *Id*. at 31-32.  The
20  ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, at any
21  time from September 7, 2018, the alleged onset date, through June 30, 2019, the date last insured.
22  *Id*. at 32.

23  On July 25, 2022, the Appeals Council denied Plaintiff's request for review, making the
24  ALJ's decision the final decision of the Commissioner.  *Id*. at 1-3.  Plaintiff filed this action on
25  September 20, 2022, seeking judicial review of the denial of his application for benefits.  (Doc.
26  1).  The Commissioner lodged the administrative record on December 21, 2022.  (Doc. 13).
27  Plaintiff filed an opening brief on May 12, 2023.  (Doc. 20).  On June 26, 2023, Defendant filed a
28  responsive brief.  (Doc. 23).

## II.     LEGAL STANDARD

### A.     The Disability Standard

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a). An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[1] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled. *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on a claimant at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

Before making the step four determinations, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is the most a claimant can still do despite their limitations and represents an assessment based on all relevant evidence. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. § 416.920(e); § 416.945(a)(2). *E.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."). The RFC is not a medical opinion. 20 C.F.R. § 404.1527(d)(2). Rather, it is a legal decision that is expressly reserved to the Commissioner. 20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.     Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir, 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v.*

*CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III.   LEGAL ISSUES

Plaintiff asserts the ALJ committed reversible error in the following respects:

1. The ALJ's MRFC is not supported by substantial evidence. (Doc. 20 at 7).
2. The ALJ's rejection of Dr. Pusateri's MRFC limitations is not supported by substantial evidence. *Id*.

### IV.   DISCUSSION

**A.   Whether the ALJ's MRFC is Supported by Substantial Evidence**

The RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); *see Valencia v. Heckler*, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis"). Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record. *See id*.; *see also* 20 C.F.R. § 416.945(a)(3) (RFC determination must be "based on all of the relevant medical and other evidence"). The RFC is not a medical opinion,

but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 404.1546(c); *Vertigan*, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).

In reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's findings. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 11173-74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions); *see Schneider v. Comm'r*, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because the medical record did not support finding that migraines would affect claimant's functioning at work). "The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." *Althoff-Gromer v. Comm'r of Soc. Sec.*, No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)); *see Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (it is within the ALJ's province to synthesize the medical evidence).

Where, as here, the claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed, Reg, 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792-93 (9th Cir. 2022).

1. Dr. Genece's Opinion

On October 21, 2019, Dr. Genece reviewed Plaintiff's claims for depression and anxiety. AR at 91-93, 96-98. Dr. Genece noted the prior ALJ concluded that Plaintiff would be able to perform simple tasks with no public contact on the basis of GAD (generalized anxiety disorder).

1    *Id.* at 92-93, 97.  The report indicates Dr. Genece considered evidence from treating providers.
2    *Id*. at 91.

3         Dr. Genece reviewed Plaintiff's medical records from September 2018.  *Id*.  Dr. Genece
4    noted Plaintiff presented with depression and anxiety.  *Id*.  Dr. Genece found in Plaintiff's MSE
5    (mental state examination) that she was unhappy and worried, with good judgment, TP (thought
6    process) intact, NO SI/HI (no suicidal ideation/homicidal ideation), TC (thought content)
7    unremarkable.  *Id*.  Dr. Genece determined Plaintiff's major depressive disorder was recurrent
8    and moderate.  *Id*.

9         Dr. Genece found in Plaintiff's April 2019 MSE that her appearance is adequate
10   grooming, cooperative, affect is mood congruent, eye contact good, speech clear, TP intact, and
11   TC unremarkable.  *Id*.  Dr. Genece considered Plaintiff's medical records from July 2019.  *Id*.
12   Dr. Genece noted Plaintiff "[r]eported difficulties managing sxs (signs of symptoms) of
13   depression and anxiety for years."  *Id*.  Dr. Genece found Plaintiff reported worsening depressive
14   sxs, was denied Social Security benefits, was dealing with family members being sick in Mexico,
15   and financial difficulties.  *Id*.  Dr. Genece noted Plaintiff's current medications were Ventolin,
16   Qvar, and Sertraline.  *Id*.  Dr. Genece determined Plaintiff's MSE presented adequate grooming,
17   cooperative, activity within normal range, affect and mood congruent, tearful, mood is unhappy
18   and worried eye contact good, TP intact, and NO SI/HI, and other psychotic d/o not due to
19   substance condition.  *Id*.

20        Dr. Genece also considered Plaintiff's medical records from August 2019.  *Id*.  Dr.
21   Genece determined Plaintiff's MSE presented appearance adequate grooming, cooperative,
22   psychomotor activity within normal range, affect is mood congruent, eye contact good, mood
23   unhappy and worried, speech is clear, insight into sxs fair, TP intact, TC with paranoia, and no
24   SI/HI.  *Id*.  Dr. Genece found Plaintiff's major depressive disorder was recurrent, mild, with
25   hallucinations.  *Id*.  The report noted Plaintiff's "ADLS (activities of daily living) do not appear
26   significantly impaired, she has hobby, takes care of finances, and can take care of personal ADLS
27   and does not need reminders."  *Id*.

28        Dr. Genece concluded the evidence on file supports no material change since the earlier

decision by ALJ Frost-Wolf, which she adopted. *Id*. at 91-93, 97. Dr. Genece recommended Plaintiff be limited to simple tasks with no contact with the public. *Id*.

2.   Analysis

Plaintiff asserts the ALJ erred by basing the MRFC determination on Dr. Genece's opinion. (Doc. 20 at 19-20). Plaintiff contends the ALJ failed to "adequately address the issues of both 'Supportability' with Dr. Genece's findings and 'Consistency' with the record as a whole, rendering the MRFC not based on substantial evidence." *Id*.

Plaintiff argues Dr, Genece's findings were not consistent with the record because Dr. Genece "harmfully and erroneously 'cherry picks' findings and mischaracterizes evidence from treating providers dated September 2018 and April 2019 through August 2019." *Id*. Specifically, Plaintiff claims Dr. Genece failed to address and discuss abnormal, significant, and severe mental status exam findings. *Id*. at 23. Plaintiff claims Dr. Genece does not touch on multiple findings of depressed, worried, and unhappy mood (AR. 464, 467, 474, 480, 486, 491, 558), with congruent flat and tearful affect (*id*. at 464, 483, 558, 564), thought content positive for paranoia (*id*. at 565, 558), somatic symptoms with auditory and visual hallucinations (*id*. at 464, 467, 480, 558, 562), tearful and anxious appearance, depressed and anxious mood, with paranoia (*id*. at 562), and objective screening scores indicating severe depression and severe anxiety (*id*. at 560). (Doc. 20 at 23-24).

Contrary to Plaintiff's contentions, Dr. Genece's opinion demonstrates she considered Plaintiff's medical records and acknowledged Plaintiff's affect as mood congruent, flat, and tearful, presenting anxious appearance and experiencing severe depression and anxiety that had worsened over time, and symptoms of paranoia and hallucinations. AR at 90-93.

Next, Plaintiff argues Dr. Genece highlights multiple mentions of TP intact, TC unremarkable, and good judgment (*id*.), but fails to address records documenting that Plaintiff suffered from worsening thought process, content, and judgment. (Doc. 20 at 24). Thereafter, Plaintiff cites several examples that her thought content had worsened over time. *Id*. However, Dr. Genece's opinion addresses Plaintiff's thought content and notes it had worsened over time. *See* AR at 91 (April 2019: TC unremarkable, August 2019: TC w/ paranoia and Hallucinations).

Plaintiff claims Dr. Genece failed to note Plaintiff's "records also documented significantly sedating side effects of non-conservative psychiatric treatment." (Doc. 20 at 24-25). However, the record demonstrates Dr. Genece considered Plaintiff's use of medication. AR at 91-92 (noting, *inter alia*, prescription of Ventolin and Qvar, and that "[c]urrent evidence shows [claimant] is being treated w/ Sertraline").

Plaintiff also argues Dr. Genece failed to discuss or cite MSE documents from October 22, 2018, noting Plaintiff's TC "contained paranoia" and that she was suffering from increased anxiety and panic attacks. (Doc. 20 at 25). Plaintiff aserts Dr. Genece failed to discuss or cite a follow-up treatment note from the treating physician, Dr. Gonzalez, dated February 27, 2019. *Id*. at 26. Plaintiff argues the note indicated severe depression and reported increased symptoms of depression. *Id*. Again, the record demonstrates Dr. Genece considered these conditions and symptoms that were found throughout Plaintiff's treatment records and detailed in those records in September 2018, and April, July, and August 2019. AR at 91-92 (noting as of October 21, 2019, "[m]ild to mod[erate symptoms] evident on MSEs").

In essence, Plaintiff asks the Court to reinterpret and/or reweigh Dr. Genece's opinion. The Ninth Circuit has stated that it is "not our prerogative" on federal review "to assume the ALJ's role and reweigh the evidence." *Wilfred-Pickett v. Berryhill*, 719 F. App'x 576, 578 (9th Cir. 2017); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Plaintiff may disagree with the ALJ's assessment of Dr. Genece's opinion, but such disagreement does not establish reversible error, nor does it provide a basis for remand. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (where the record could support more than one rational interpretation, the court defers to the ALJ's decision).

Separately, Plaintiff argues "the fact that Dr. Genece found 'Evidence on file supports no material change' and adopted the prior ALJ's MRFC finding per *Chavez*, is not 'Supported' by the State Agencies' findings and renders the ALJ MRFC decision not supported by substantial evidence." (Doc. 20 at 27). The undersigned disagrees. In cases involving a prior final agency decision of nondisability where the claimant subsequently files a new application for benefits, the

14

prior administrative decision triggers a presumption of continuing nondisability. *Chavez*, 844 F.2d at 693-94 (where ALJ made "no reference" to prior ALJ's decision and "failed to consider the first judge's findings," the "principles of res judicata made binding the first judge's determination"). To overcome this presumption of continuing nondisability, the claimant "must prove 'changed circumstances' indicating a greater disability." *Id*. (where the defendant failed to identify "new" information that "had not been presented to the first" ALJ, it was error for the second ALJ to have "reopened the prior [ALJ's] determinations concerning the claimant's ability to perform his past relevant work") (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)); *cf. Stubbs-Danielson*, 539 F.3d at 1172-73 (where "[t]he entirety of the medical evaluations presented with respect to the [claimant's] present application were conducted after [claimant's] initial disability determination [,] [t]hese evaluations necessarily presented new and material information not presented to the first ALJ") (applying *Chavez*).[2]

Although the presence of additional impairments rebuts the general presumption of nondisability, that alone is insufficient to rebut the specific findings of the prior decision. *Chavez*, 844 F.2d at 694. Instead, there must be "new and material" evidence relating to each finding. *See* AR 97-4(9).

As stated above, ALJ Dowling found Plaintiff had rebutted the *Chavez* presumption by showing changed circumstances that the record contained impairments not previously in evidence or considered severe, including depression with paranoia and impaired judgment. AR at 25. Further, ALJ Dowling determined the record contains new and material evidence regarding Plaintiff's RFC, including additional treatment that warrants additional review of Plaintiff's RFC

---

[2] Social Security Acquiescence Ruling 97-4(9), available at 1997 WL 742758, provides guidance on the *Chavez* decision: "In order to rebut the presumption of continuing nondisability, a claimant must prove "'changed circumstances' indicating a greater disability." In addition, the court [in *Chavez*] indicated that where the claimant rebuts the presumption by proving a "changed circumstance," principles of res judicata require that certain findings contained in the final decision by the ALJ on the prior claim must be given some res judicata consideration in determining whether the claimant is disabled . . . The court concluded that where the final decision on the prior claim, which found the claimant not disabled, contained findings of the claimant's residual functional capacity, education, and work experience, [the agency] may not make a different finding in adjudicating the subsequent disability unless there is new and material evidence . . ."

1    without adoption of the previous hearing decision's RFC. *Id*. In contrast, Dr. Genece found the
2    evidence on file supports no material change, which she adopted. AR at 91.

3    Plaintiff states "Dr. Genece notes new diagnoses, including that of depressive disorder and
4    hallucinations and other psychotic disorders, not due to a substance or known physiological
5    condition," but then adopted the findings from a prior hearing decision that did not account for
6    said new diagnoses. (Doc. 20 at 27). Plaintiff argues the ALJ's adoption of Dr. Genece's opinion
7    is inconsistent with the ALJ's rationale that *Chavez* did not apply because changed circumstances
8    regarding evidence of impairments not previously in evidence or considered severe, including
9    depression with paranoia and impaired judgment, were present. *Id*. at 27-28.

10   Plaintiff fails to show that the ALJ was obligated to reject Dr. Genece's proposed RFC.
11   Such an argument suggests that a finding of "new and material changes" is the equivalent of
12   finding the prior ruling now erroneous. Neither *Chavez* nor Acquiescence Ruling 97-4(9)
13   mandate such a standard. *E.g., Tansy v. Comm'r of Soc. Sec.*, No. CV-21-1873-PHX-SMB
14   (JFM), 2022 WL 16752321, at *13 (D. Ariz. Sept. 22, 2022) (rejecting argument that an ALJ
15   errors where he finds new and material changes justifying the reopening of an application and
16   nevertheless adopts a medical consultant's RFC opinion where the consultant found "no
17   significant new and material changes"). Instead, the ALJ considered Dr Genece's proposed RFC
18   along with Plaintiff's new evidence of paranoia, hallucinations, and limitations and arrived at a
19   new MRFC. The new MRFC accounted for Plaintiff's changed circumstances. *See* AR at 29
20   ("The restriction to work with the public adequately addresses limitations related to paranoia,
21   hallucinations and limitation in insight.").

22   Accordingly, the ALJ's MRFC finding is supported by substantial evidence.

23   **B.    Whether ALJ's Rejection of Dr. Pusateri's MRFC Limitations is Supported**
24   **by Substantial Evidence**

25   Plaintiff separately assigns error by the ALJ in his rejection of Dr. Pusateri's MRFC
26   limitations. As discussed above, ALJ Dowling noted Dr. Pusateri's opinion was offered in May
27   2021 and indicated that limitations began February 2021, more than 18 months after Plaintiff's
28   date last insured. *Id*. ALJ Dowling found Dr. Pusateri's opinion did not address the relevant

period and was inconsistent with the record as a whole. *Id.* An ALJ properly may disregard an opinion when it was made so far after the plaintiff's last date of insurance. *See Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir. 1984) (ALJ properly disregards opinion of a treating physician who examined claimant a year and a half after the relevant period). Given the length of time between the last date Plaintiff was insured and Dr. Pusateri's opinion, the ALJ properly discounted Dr. Pusateri's opinion. *See, e.g.*, *Bogart v. Comm'r of Soc. Sec. Admin*, No. 2:19-cv-0584-KJN, 2020 WL 5535402, at *5 (E.D. Cal. Sept. 15, 2020) ("Given the length of time between the last date plaintiff was insured and the date of the questionnaire, the ALJ properly considered Dr. Lau's opinion to be too remote to be given controlling weight.").

Accordingly, the ALJ's rejection of Dr. Pusateri's MRFC limitations was supported by substantial evidence.

## V. CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ. *Tackett*, 180 F.3d at 1098. On the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). Plaintiff fails to establish that the ALJ's MRFC is not supported by substantial evidence. Accordingly, IT IS HEREBY RECOMMENDED:

1. Plaintiff's motion for summary judgment (Doc. 20) be DENIED;
2. The decision of the Commissioner of Social Security be AFFIRMED.
3. The Clerk of the Court be directed to enter judgment in favor of the Commissioner of Social Security and close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days of being served with these findings and recommendations, Petitioner may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Petitioner is advised that failure to file objections within the specified time

///

may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 8, 2024**

UNITED STATES MAGISTRATE JUDGE